No. 24-1498

**In the**
**United States Court of Appeals**
**For the Third Circuit**

_____

VINCENT SORACE; JOSEPH YERTY; TAMMY YERTY; JAMES
ZARONSKY; LINDA ZARONSKY; VIKTOR STEVENSON; ASHLEY YATES;
KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of
similarly situated persons,

*Plaintiffs-Appellees,*

v.

WELLS FARGO BANK, N.A.,

*Defendant-Appellee,*

v.

JENNIFER LYNN HUMMEL and SHAWN DAVID HUMMEL,

*Objectors-Appellants.*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
The Honorable Gerald J. Pappert, U.S. District Judge
Case No. 2:20-cv-04318

_____

**BRIEF OF APPELLEE WELLS FARGO BANK, N.A.**

_____

Jarrod D. Shaw
Karla L. Johnson
McGuireWoods LLP
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
T: (412) 667-7907

*Counsel for Appellee Wells Fargo Bank, N.A.*

## United States Court of Appeals for the Third Circuit

### Corporate Disclosure Statement and
### Statement of Financial Interest

No. 24-1498
_____

Vincent Sorace, et al.

v.

Wells Fargo Bank, N.A.

<u>Instructions</u>

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

i

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

## Wells Fargo Bank, N.A.

(Name of Party)

1) For non-governmental corporate parties please list all parent corporations: Wells Fargo Bank, N.A. is an indirect, wholly-owned subsidiary of Wells Fargo & Company.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

Wells Fargo & Company (NYSE: WFC) is a publicly traded corporation on the New York Stock Exchange. Wells Fargo & Company is not aware of any publicly held corporation that owns 10% or more of its stock.

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

N/A

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

N/A

## /s/ Jarrod D. Shaw

(Signature of Counsel or Party)

Dated: July 17, 2024

**rev: 09/2014**                     (Page 2 of 2)

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ...........................3

STATEMENT OF THE CASE...................................................................3

I.      Relevant Facts..........................................................................3

II.     Procedural History ....................................................................6

III.    Rulings Presented for Review ....................................................8

SUMMARY OF THE ARGUMENT ...........................................................9

STANDARD OF REVIEW .....................................................................12

ARGUMENT ......................................................................................13

I.      The District Court Properly Analyzed the Parties' Negotiations
        Pursuant to *In Re: WaWa*......................................................13

II.     The District Court Properly Analyzed and Approved the Scope
        of the Release..........................................................................17

III.    The District Court Did Not Abuse Its Discretion in Permitting Wells
        Fargo to Issue 1099-C Forms for Waivers of Deficiency Balances..............22

        A.      The "Contested Liability Doctrine" Advanced by the
                Hummels Does Not Negate Wells Fargo's Obligation to
                Issue 1099-C Forms ......................................................23

        B.      The District Court Properly Exercised Its Discretion in
                Approving the Settlement Notwithstanding 1099-C Form
                Issuance ......................................................................26

IV.     Wells Fargo Takes No Position on Class Counsel's Fee Petition.................28

V.      The District Court Did Not Abuse Its Discretion in Approving the
        Settlement Benefits..................................................................29

VI.     The District Court Was Not Required to Approve the Withdrawal of
        the Brooks-Wade Objection ......................................................36

CONCLUSION....................................................................................37

CERTIFICATE OF COMPLIANCE.........................................................39

CERTIFICATE OF SERVICE ................................................................40

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Antista v. Fin. Recovery Servs., Inc.*,
  No. 2:17-CV-3567 (WJM), 2018 WL 259771 (D.N.J. Jan. 2, 2018)...........25, 26

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ................................................................30

*In re Blood Reagents Antitrust Litig.*,
  783 F.3d 183 (3d Cir. 2015) ................................................................12

*Brennan v. Cmty. Bank, N.A.*,
  314 F.R.D. 541 (M.D. Pa. 2016) ..............................................24, 26

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................13

*Corra v. ACTS Ret. Servs., Inc.*,
  No. 2:22-cv-02917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024) ...........................16

*In re Fasteners Antitrust Litig.*,
  No. 2:08-md-1912, 2014 WL 285076 (E.D. Pa. Jan. 24, 2014)........................18

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ......................................................13, 30

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ......................................................30, 31

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
  934 F.3d 316 (3d Cir. 2019) ......................................................20, 21

*Halley v. Honeywell Int'l, Inc.*,
  861 F.3d 481 (3d Cir. 2017) ......................................................17, 18

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ................................................................33

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008) .....................................................33

*Monaco v. Mitsubishi Motors Credit of Am., Inc.*,
    34 F. App'x 43 (3d Cir. 2002) ...........................................................21

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016) .....................12, 13, 14

*In re New Jersey Tax Sales Certificates Antitrust Litig.*,
    750 F. App'x 73 (3d Cir. 2018) ..............................................30, 31, 33

*Perez v. Uline, Inc.*,
    157 Cal. App. 4th 953 (Cal. Ct. App. 2007) .......................................19

*In re Prudential Ins. Co. of America Sale Practice Litig. (Prudential II)*,
    261 F.3d 355 (3d Cir. 2001) ...........................................................17, 18

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .............................................................30

*Rood v. Comm'r*,
    71 T.C.M. (CCH) 3125 (T.C. 1996), *aff'd sub nom. Rood v. Comr.
    of IRS*, 122 F.3d 1078 (11th Cir. 1997) ............................................26

*Scott v. Bimbo Bakeries USA, Inc.*,
    No. 2:10-cv-3154, 2015 WL 8764491 (E.D. Pa. Dec. 15, 2015) ........................21

*Spell v. Cnty. of Los Angeles*,
    No. 2:19-cv-6652, 2020 WL 3868388 (C.D. Cal. July 8, 2020) .......................19

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .............................................................33

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .............................................................13

*In re Wawa, Inc. Data Sec. Litig.*,
    85 F.4th 712 (3d Cir. 2023)...............................................13, 14, 15, 16

*Zarin v. Comm'r*,
    916 F.2d 110 (3d Cir. 1990) .............................................................25

**Rules**

Fed. R. Civ. P. 23 ............................................................................27, 30

**Other Authorities**

26 C.F.R. § 1.6050P-1............................................................................23

2 McLaughlin on Class Actions § 6:16 (14th ed.)...................................31

**INTRODUCTION**

Following three years of contentious litigation in the District Court and two sessions with retired United States Magistrate Judge Diane Welsh, the Plaintiffs and Wells Fargo agreed to a class-wide settlement with Pennsylvania borrowers whose vehicles were repossessed, providing for a $15 million settlement, waiver of approximately $65 million in deficient auto loans, and deletion of credit reporting on those loans for the class. Despite the significant negotiations and efforts put into the class settlement, the Hummels' repeated attempts at interfering with the settlement in multiple jurisdictions has now culminated in this appeal.

Following the filing of the motion for preliminary approval of the settlement by Class Counsel, counsel for the Hummels sought to intervene in the settlement on not one, but two occasions. The first motion for intervention did not involve the Hummels, but rather the original movants were not even members of the class. Appx456-468. After this was noted in opposition briefing from both the class and Wells Fargo (Appx469-484; Appx485-491), the Hummels' counsel amended their motion to intervene, this time including the Hummels as movants. Appx492-512. After additional briefing, the District Court denied the motion to intervene and granted preliminary approval of the class settlement. Appx36-43; Appx44-62.

Undeterred, the Hummels then instituted a new class action in the United States District Court for the Western District of Pennsylvania, *Hummel v. Wells*

*Fargo Bank, N.A.*, Case No. 2:23-cv-02002 (W.D. Pa.) based on claims released in this action and based on letters received from Wells Fargo where the Hummels nonsensically claim that their *receipt of payments* from Wells Fargo was improper debt collection.  Appx666-671.

However, rather than opting out of the *Sorace* settlement and pursuing their claims separately and consistent with their own class action filing, they *also remained class members here* and objected to the settlement.  Following an extensive hearing on the motion for final approval where the District Court questioned the Hummels' counsel about the appropriateness of their strategy and tactics, the presence of no other objectors other than the Hummels themselves, and the District Court's finding that the Hummels' arguments lacked merit, counsel for the Hummels instituted this appeal.  The Hummels are simultaneously holding up significant relief to approximately 22,000 class members while also continuing to pursue released claims in the Western District of Pennsylvania against Wells Fargo.

As set forth herein, the District Court conducted an appropriate analysis of the Hummels' arguments, and the District Court's decision approving the terms of the class settlement over the Hummels' objections should be affirmed, such that the orderly administration of relief to Settlement Class Members can proceed.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

1.    *Hummel v. Wells Fargo Bank, N.A.*, Case No. 2:23-cv-02002 (W.D. Pa.).  In the *Hummel v. Wells Fargo* matter, Appellants assert class action claims against Wells Fargo that are encompassed in the release in the current matter.  It is Wells Fargo's position that this separate class action is a violation of the terms of the Preliminary Approval Order and Final Approval Order entered by the United States District Court of the Eastern District of Pennsylvania in the current action on appeal.  Wells Fargo's motion to dismiss is pending, and the *Hummel* matter has not been before this Court previously.

## STATEMENT OF THE CASE

### I.    Relevant Facts

This class action settlement at issue on appeal resulted from a class action brought by named plaintiffs Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson ("Plaintiffs-Appellees" or "Plaintiffs") for alleged violations of Pennsylvania law by Wells Fargo Bank, N.A. ("Defendant-Appellee" or "Wells Fargo") related to post-repossession notices sent to borrowers after the repossession of their vehicles and issues with auto repossession practices.  Appx320-324.  After approximately eighteen months of negotiations on the terms of the settlement and following two mediation sessions with The Honorable Diane Welsh, retired United

States Magistrate Judge, the Plaintiffs and Wells Fargo executed a settlement agreement to resolve the class action (the "Settlement Agreement" or "Agreement") for members of the class, as defined in the Agreement as:

> (1) All debtors, obligors, and co-obligors: who entered into a retail installment sales contract in Pennsylvania for the financing of a Motor Vehicle purchased primarily for personal, family or household use and whose retail installment sales contract was assigned or sold to Wells Fargo; and, (2) from whom Wells Fargo, as secured party, repossessed the vehicle or ordered it to be repossessed after Wells Fargo deemed the contract to be in default; and (3) who were sent a Notice of Intent to dispose of or sell the repossessed vehicle by Wells Fargo at any time on or after July 7, 2014 through the date of Preliminary Approval.

Appx324-325; Appx329, at ¶ 1.5.

Wells Fargo agreed to significant relief to the class in the Settlement Agreement. Specifically, Wells Fargo agreed to pay $15 million into a common fund, which would provide and encompass: (1) settlement administration costs; (2) incentive payments to the Plaintiffs as approved by the court; (3) fees and expenses awarded by the court to counsel for the Class ("Class Counsel"), (4) refund payments to members of the Class who made payments on any Deficiency Balances[1] on their Accounts, which was estimated at approximately $6.659 million, and (5) payments to the Class based on a per Account basis. *See* Appx716, at ¶ 3.3.

---

[1] "Deficiency Balance" is defined as "the Account balance remaining following the repossession and sale of a Settlement Class Member's vehicle, after crediting the Class Member's account with the sale price of the vehicle and including all interest and other charges." Appx702, at ¶ 1.18.

Wells Fargo also agreed to "cease collecting on and . . . fully compromise the Deficiency Balance alleged to be owed by" the Class estimated at "approximately $64.39M," and to request that credit reporting agencies delete tradelines reported for the Class related to their Accounts.  Appx715, Appx719-721; at ¶¶ 3.2, 3.4.

In exchange, Plaintiffs and the Class agreed to, among other things, release their claims pursuant to the terms of the Agreement, defined as the "Released Claims."  Appx705-706, at ¶ 1.38.  The Released Claims are specifically tethered to the Accounts, including the "origination, financing, assignment, and servicing of any Account" and "the charging, payment, collection, and attempted collection of amounts relating to any Account…"  *Id.*  Account is defined as "each Settlement Class Member's auto loan account(s) owned by Wells Fargo Auto related to the financing of his/her/their vehicle(s), which were subsequently repossessed and which are the subject of this Action."  Appx700, at ¶ 1.2.

The agreed "Released Claims" also included "Unknown Claims" which is defined, in part, as:

> any Released Claims which any Releasor does not know or suspect to exist in his or her favor at the time of the entry of the Judgment, and which, if known by him or her might have affected his or her settlement with and release of the Releasees, or might have affected his or her decision to opt out of the Settlement Class or to object to this Settlement….

Appx709, at ¶ 1.51.

## II.    Procedural History

On or about September 7, 2023, the Hummels ("Objector-Appellants" or "Hummels") made a failed attempt to intervene in the class settlement.  Appx21-22. On September 15, 2023, the District Court granted preliminary approval of the class settlement pursuant to the terms of the Settlement Agreement.  Appx45-48.

The Preliminary Approval Order specifically included the Settlement Agreement's mechanism for class members to exclude themselves from, or opt-out of, the Class to allow individuals to pursue their claims separately and avoid being bound by the terms of the Settlement Agreement.  Appx55, at § 12 (Opt Out Rights). The deadline to opt out of the class was December 26, 2023 (Appx53-54, 56, at ¶¶ 10, 12), but the Hummels did not opt out of the Settlement.

The Preliminary Approval Order provided that any Class Member that did not opt-out of the settlement would be barred from asserting released claims in any other forum, stating, "[p]ending final determination of whether the Settlement should be approved, and upon expiration of the Opt-Out Deadline, all Class Members who do not timely and validly exclude themselves from the Settlement Class, and each of them, and anyone who purports to act on their behalf, are barred from directly or indirectly maintaining, commencing, prosecuting, or pursuing directly, representatively, or in any other capacity, any Released Claim subsumed and

6

covered by the release in the Agreement, including in any court or arbitration forum." Appx61, at ¶ 25.

On or about November 17, 2023, the Hummels filed a new class action in the United States District Court for the Western District of Pennsylvania, asserting claims under the Fair Credit Extension Uniformity Act and the Pennsylvania Unfair Trade Practice Act, arising out of letters and *payments* that they received from Wells Fargo relating to their Account at issue in this matter that resulted in repossession of the vehicle. *Hummel v. Wells Fargo Bank, N.A.*, Case No. 2:23-cv-02002 (W.D. Pa.). The commencement of this new class action, as well as the Hummels' continued prosecution of that action, is in direct violation of the Preliminary Approval Order and Final Approval Order in this matter. Appx22 (finding statement of the Hummels' counsel that he was "unaware" of the term of the Preliminary Approval Order "not credible.") As of the date of filing, Wells Fargo's motion to dismiss the Hummels' First Amended Class Action Complaint is fully briefed and pending, relying partially on the argument that the claims there are barred by the release and preliminary and final approval orders in this matter. *Hummel v. Wells Fargo Bank, N.A.*, Case No. 2:23-cv-02002 (W.D. Pa.) at D.E. 25, 31.

On or about December 18, 2023, the Hummels then filed an objection to the Settlement—arguing that (1) the Release was overbroad, (2) the deficiency balance compromise/waiver is an "illusory" benefit producing a tax burden on the Class,

(3) the settlement fund of $15 million is insufficient, (4) Class Counsel's fee award request was excessive, and (5) the parties' purported "side deal" as to fees must be "closely scrutinized." *See* Appx562-585. Both Plaintiffs and Wells Fargo responded to the Hummels' objection. Appx664-675; *Sorace v. Wells Fargo Bank, N.A.*, Case No. 2:20-cv-4318 (E.D. Pa.) at D.E. 100.

## III.    Rulings Presented for Review

The District Court granted final approval of the class settlement on February 15, 2024 ("Final Approval Order"). *See* Appx4-34; Appx35. In granting final approval, the District Court examined and approved the terms of the Settlement Agreement, including the Release, for which all class members who did not opt-out (including the Hummels) are bound, as well as the permanent injunction barring litigation by such class members for claims encompassed by the release. *Id.*

Notably, the District Court addressed in its final approval decision the Hummels' argument that they were unaware of the provision in the Preliminary Approval Order barring the separate *Hummel* class action "pertaining to their same Wells Fargo accounts at issue in this case" finding the Hummels' counsel's statement "not credible and, among other things, taints the Hummels' objections." Appx22-24. The District Court warned that it was inappropriate to "stir[] up another class action in a different district over the same alleged conduct," but left it to the Western District Judge to evaluate, at least initially. *Id.*

8

The District Court specifically addressed the *Girsh* factors in its analysis and used *In re: Wawa* as a guide in assessing the parties' negotiations and the settlement terms. Appx12-20. The District Court, in a well-reasoned analysis (Appx21-34), addressed the Hummels' assertions that "(1) the release is overbroad; (2) the forgiveness of deficiency balances on class member accounts is an 'illusory' benefit and raises tax issues for class members; (3) the settlement fund is insufficient; and (4) the Court should look askance at the attorneys' fees." Appx23. The District Court appropriately concluded that "[n]one of their arguments have any merit." *Id.* This appeal followed.

## SUMMARY OF THE ARGUMENT

Appellants' arguments on appeal demonstrate why Federal Rule of Civil Procedure 23 requires that class members be afforded the opportunity to opt-out of a class settlement: if an individual simply wants a better deal, her or she can opt out and separately pursue his or her claims without consequence. Instead of following that procedure, Appellants Jennifer and Shawn Hummel—acting together as the lone objectors to the settlement—ask this Court to disturb the District Court's final approval of a class settlement providing cash distributions, reimbursement of more than $6M in payments on deficiency balances on Accounts of class members, a complete waiver of any remaining deficiency balances, and requests to delete credit tradelines for thousands of Pennsylvania consumers, merely because they believe

9

they are entitled to more benefits from claims that were effectively released when they chose not to opt out of the Class.

The District Court addressed the Hummels' objections to the settlement—which the Hummels raise in the instant appeal—both at the Final Approval hearing and in the Court's Opinion granting Final Approval, where it made clear that their arguments were flawed, unsupported, and/or did not cause any concern in approving the settlement because the Hummels could have simply excluded themselves. Appx4-34; Appx862-969.   Notwithstanding that the District Court explained its reasoning for rejecting each of the Hummels' objections individually, the Hummels believe that the District Court abused its discretion in approving the class settlement.

None of the Hummels' appeal arguments have merit.   *First*, the Hummels' counsel goes to great lengths to create a narrative of a "side deal" between the Plaintiffs and Wells Fargo during settlement that has no basis in fact.   With respect to the alleged "side deal" regarding Class Counsel's fees, there is no evidence that a separate agreement about fees was made, and the Court reviewed and analyzed the term in the Agreement that Wells Fargo would take no position on Class Counsel's fee request up to $6 million.   In granting the request, the District Court did not abuse its discretion in awarding $6 million in fees and approximately $24,000 for reimbursement of expenses.

*Second*, the Release is not overbroad simply because it encompasses the Hummels' purported "improper fee" claims and any Unknown Claims. The Release is consistent with those commonly used in class settlements, including those reviewed and approved by the Third Circuit, which appropriately encompass claims arising out of a transaction or occurrence, which in this case, included the Accounts at issue that resulted in repossession. The Hummels' argument that the scope of the Release is improper would challenge the important policy interest of judicial economy articulated by this Court, which permits parties to enter into comprehensive class settlements that prevent re-litigation of questions encompassed in the matter.

*Third*, the District Court did not abuse its discretion by approving the settlement where Settlement Class Members would receive a waiver of the deficiency balances on their Accounts, with Wells Fargo potentially issuing tax form 1099-Cs related to such waiver, where consistent with Wells Fargo's tax reporting obligations for a particular Account. Moreover, the Hummels offer nothing beyond speculation about the purported unfair "tax burden" that would result, the undefined "tax benefit" to Wells Fargo, or how any tax implications would outweigh the benefit of the discharge of approximately $65M in debt to Settlement Class Members. In fact, the Hummels do not even have a deficiency balance on their account, such that they would not be receiving any such 1099-C tax form.

*Fourth*, there was no abuse of discretion in approving a $15 million settlement fund to cover attorney fees, settlement administration fees, class representative incentive awards, reimbursement of payments on deficiency balances made by Settlement Class Members, and distribution payments to the Class, particularly where the District Court considered the fairness, reasonableness, and adequacy of the overall settlement which includes non-cash benefits of requests for tradeline deletion and deficiency balance waiver. That a class member could obtain a higher amount of damages by pursuing his action individually is not sufficient to deem a settlement fund inadequate, especially where individuals received notice and had the opportunity to opt out.

*Fifth*, the District Court was not required to approve the withdrawal of Ms. Brooks-Wade's objection under Federal Rule 23(e)(5)(B) because there is no evidence that any "payment or other consideration" was exchanged for her withdrawal. Even so, the District Court did not abuse its discretion in approving the class settlement over an objection, effectively withdrawn or not.

## STANDARD OF REVIEW

The Third Circuit reviews a "decision to certify a class and approve a classwide settlement for abuse of discretion." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016), *as amended* (May 2, 2016) (citing *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 185 n.1 (3d Cir. 2015);

*In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001)).  An abuse of discretion exists "if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008)) (internal quotation omitted).  As the "decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court," the appellate court will "accord great deference to the district court's factual findings."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).  Moreover, the Third Circuit has held "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *Id.*  As such, an abuse of discretion standard applies to all of the issues presented here.

## ARGUMENT

### I.    THE DISTRICT COURT PROPERLY ANALYZED THE PARTIES' NEGOTIATIONS PURSUANT TO *IN RE: WAWA.*

The Hummels take issue with the District Court's analysis of the "clear sailing" provision in the Settlement Agreement, arguing that it failed to closely scrutinize the parties' alleged "side agreement" that Wells Fargo would not oppose Class Counsel's fee application up to $6 million, as required by *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023).  App. Br. at 11-16.  The Hummels characterize Paragraph 15.1 of the Settlement Agreement—stating Wells Fargo

would not object to class counsel moving the court for a fee award up to $6 million—as a "side deal" between the parties. *Id.* To be clear, the parties made no separate agreements beyond that reflected in the Settlement Agreement. The Hummels do not point to any evidence, in the record or otherwise, that fees were used as a bargaining chip in negotiations. *Id.* The narrative put forth by the Hummels is entirely unsupported.

In *In re: Wawa*, this Court reiterated that clear sailing provisions, while "not an automatic bar to settlement approval," "deserve careful scrutiny" when assessing a request for counsel fees. 85 F.4th at 725 (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 447). There, upon an appeal brought by a class member challenging the counsel fees awarded from the settlement common fund, the Third Circuit vacated the fee award and remanded the issue to the district court with instructions to reassess whether the parties' clear sailing agreement indicated collusion—the primary concern with such agreements—and to consider the requested amount against the benefits available to and claimed by the class. *Id.* at 725-26. The Third Circuit made no determination on, nor suggested the answer to, either issue; instead, it merely pointed out the principles the district court must consider in its supplemental review. *Id.*

As relevant here, the Third Circuit held that "the mere presence of a neutral mediator" during class settlement negotiations "is not on its own dispositive" of non-

collusiveness in reaching a settlement agreement but does weigh in favor of such a finding. *Id.* at 726. Likewise, that the parties reserve discussions of counsel fees until after class compensation has been agreed upon does not halt the district court's inquiry; rather, the court must consider whether counsel fee negotiations impacted the parties' negotiations as to the class benefits. *Id.* The Court noted that a "district court faced with such a provision in a class action settlement should review the process and substance of the settlement and satisfy itself that the agreement does not indicate collusion or otherwise pose a problem." *Id.* at 725-26 (citation omitted).

The District Court conducted the proper analysis, following the Third Circuit's guidance in *In re: Wawa* and carefully assessed the fairness of the settlement in conjunction with Class Counsel's request for $6 million in fees and reimbursement of approximately $24,000 in litigation expenses. Appx27-28. Specifically, Judge Pappert noted the mediator's declaration clearly stating that "the amount of attorneys' fees 'was never used as a bargaining chip' in negotiations." *Id.* (citing Declaration of Judge Welsh at D.E. 101-6). Judge Pappert further noted that, contrary to the Hummels' "characterization of the settlement process," the protracted litigation and proposed settlement benefits to class members was "indicative of zealous advocacy" and "an arms'-length deal absent collusion." Appx27-28.

In addition, Plaintiffs' counsel submitted a chart comparing the issues raised by the Third Circuit in *In re: Wawa* with the facts related to these settlement

negotiations, showing the propriety of the settlement terms and negotiations. *See* Appx814-817. As set forth therein, this settlement includes cash payments to class members as opposed to gift cards, with all class members receiving checks without the requirement to submit any claim form. Appx815. Further, unlike in *In re: Wawa*, there never was and is not any fee reversion to the defendant. *In re Wawa*, 85 F.4th at 726-27 (noting that fee reversion could be evidence of collusion rather than zealous advocacy). *See also Corra v. ACTS Ret. Servs., Inc.*, No. 2:22-cv-02917, 2024 WL 22075, at *15 (E.D. Pa. Jan. 2, 2024) (finding no evidence of collusion as to fees in class settlement where mediator explained the propriety of negotiations).

At bottom, the District Court's approval of the settlement and counsel fees was based on a scrutinizing review of the parties' months-long, arms-length negotiations, the role Judge Welsh had in mediating the terms of settlement and Her Honor's sworn statement that counsel fees were never used as a bargaining chip in negotiating class benefits, and the propriety of the fees requested in the context of the greater settlement value. Appx12-13, 15, 27-28. The Hummels' assertions that these determinations fall short of this Circuit's precedent are groundless, as the District Court closely followed the guidance in *In re: Wawa*. Accordingly, this Court should affirm the District Court's final approval of the settlement.

## II. THE DISTRICT COURT PROPERLY ANALYZED AND APPROVED THE SCOPE OF THE RELEASE.

The Hummels' argument that the District Court erroneously approved of an overbroad Release is without merit. In determining that the instant class settlement was fair, reasonable, and adequate, the District Court considered the Hummels' objection to the Release and rejected their contention because "the scope of the released unknown claims is limited to those that would arise from the auto-financing accounts at issue in this settlement." Appx23. Further, the District Court reiterated that "it is 'not unusual for a class settlement to release all claims arising out of a transaction or occurrence' including unknown claims" in finding that the scope of the Release was appropriate. *Id.* (quoting *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 494 (3d Cir. 2017)).

The Hummels appear to mainly take issue with the fact that "Unknown Claims" are included in the release. However, Third Circuit authority defeats this argument. In *Halley v. Honeywell, Int'l, Inc.*, the Third Circuit specifically found that the district court did not abuse its discretion in approving a class settlement that included the release of "unknown and unforeseen claims" explaining that "it is not unusual for a class settlement to release all claims arising out of a transaction or occurrence." 861 F.3d at 494-95. As the court explained, "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action." *Id.* at 494 (citing *In re Prudential Ins. Co. of America*

*Sale Practice Litig. (Prudential II)*, 261 F.3d 355, 366 (3d Cir. 2001)).  "[W]e have endorsed the rule because it serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *Id.* (citations omitted).

Here, the "unknown claims" are linked specifically to the auto financing account at issue in the settlement.  *See* Appx338, at ¶ 1.51 ("'Unknown Claims' mean any Released Claims . . .").  The scope of the "Released Claims" is not limitless, but all based on the "Account" at issue in the repossession, defined as "each Settlement Class Member's auto loan account(s) owned by Wells Fargo Auto related to the financing of his/her/their vehicle(s), which were subsequently repossessed and which are the subject of this Action." *See* Appx329, at ¶ 1.2; *see also* Appx334, at ¶ 1.38 (defining "Released Claims" as including "allegations that were or could have been asserted in the Second Amended Complaint" against Wells Fargo, as well as claims relating to the notices sent, "origination, financing, assignment, and servicing of any Account," repossession relating to any Account, collection on an Account, and credit furnishing relating to an Account).  This is not out of the ordinary or improper in any way.[2]

---

[2] The Hummels also take issue with the inclusion of statutory language from California Civil Code § 1542.  App. Br. at 19.  However, the failure to include such language could render a release ineffective in whole or in part.  *See, e.g.*, *In re Fasteners Antitrust Litig.*, No. 2:08-md-1912, 2014 WL 285076, at *13 (E.D. Pa. Jan. 24, 2014) (ordering upon final approval of class settlement "[e]ach member of

That the Hummels ultimately take issue with the scope of the Release because it prohibits claims related to fees assessed on their account that is the subject of a separate class action they chose to bring in the Western District of Pennsylvania after receiving notice in this case is immaterial to whether the District Court exercised sound discretion in approving the settlement; indeed, the District Court explicitly stated in response to the objection that "class members may either remain in a class *or opt out and do their own thing*, not both." Appx24 (emphasis added). At bottom, the Hummels had ample opportunity to opt out of the settlement class and pursue claims related to their account, and their decision to remain in the class and object to the Release simply because those claims are encompassed does not render the Release overbroad. Rather, it calls into question their failure to opt out of the settlement if they felt that they had valuable claims that would be released. Appx21 (noting the "curious approach to this case" taken by the Hummels and their counsel).

---

the Settlement Class . . . has expressly *agreed to waive and release*, and shall be deemed to have waived and released, any and all *provisions, rights and benefits conferred* by § 1542 of the California Civil Code") (emphasis added); *Spell v. Cnty. of Los Angeles*, No. 2:19-cv-6652, 2020 WL 3868388, at *1 (C.D. Cal. July 8, 2020) (holding settlement class member "cannot state a claim for relief based upon her prior release of both known and unknown claims against [defendant], and her waiver of the protections of California Civil Code Section 1542"); *Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959 (Cal. Ct. App. 2007) (holding plaintiff "understood he was releasing claims arising under all statutes the agreement referred to, even those he did not understand" based on waiver of state law protection language). There is nothing unusual about the inclusion of such language.

Even so, the Hummels offer nothing on appeal to warrant disruption of the District Court's settlement approval.

Further, the authority cited by the Hummels does nothing to call into question the scope of the Release. The Hummels' assertion that the Release here raises a "red flag"—citing the Third Circuit's decision to vacate settlement approval in *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019)— is misplaced. In *In re: Google*, this Court was concerned that the release of "all class member claims, including for damages, that did or could stem from, or relate to, the subject matter of the litigation" was not adequately scrutinized by the lower court because the settlement proposed only an *injunctive* class under Federal Rule 23(b)(2), rather than Rule 23(b)(3) for damages, which "thus avoided the heightened certification and notice requirements that apply to the latter." *Id.* at 329.

Contrary to Appellants' suggestion, the scope of the release was troubling in *In re: Google* not because it was impermissibly broad as written, but because the parties "sidestepped these [Rule 23(b)(3) notice] requirements" yet "nonetheless obtained—for themselves anyway—the precise benefits that a Rule 23(b)(3) class gives to the defendant and class counsel: namely, a broad class-wide release of claims for money damages for the defendant, and a percentage-of-fund calculation of attorneys' fees for class counsel." *Id.* Simply put, the concerns discussed in *Google* do not apply here as the Rule 23(b)(3) settlement class is set to receive

monetary and non-monetary benefits, and this Court nevertheless recognized that Rule 23(b)(3) settlements often result in a broad release of claims by all class members. *Id.*

Moreover, the Hummels' invocation of the "identical factual predicate doctrine" is misplaced because it is employed to determine whether new claims brought by a settlement class member are encompassed by a prior (and otherwise enforceable) release, not whether a prior release in another matter was itself impermissibly broad. App. Br. at 20-21. In *Scott v. Bimbo Bakeries USA, Inc.*, No. 2:10-cv-3154, 2015 WL 8764491 (E.D. Pa. Dec. 15, 2015), the court held that the collective action settlement release in a prior action did not encompass the claims brought in the subsequent action; however, the decision did not, as the Hummels suggest, impact the *propriety* of the original release itself. *Scott*, 2015 WL 8764491, at *3, 6. Even further, as the court noted, the "Third Circuit Court of Appeals has not adopted a strict interpretation of the 'identical factual predicate' doctrine" and provided examples where class settlement releases were enforced to bar later asserted claims. *Id.* at *4-6. *See, e.g.*, *Monaco v. Mitsubishi Motors Credit of Am., Inc.*, 34 F. App'x 43, 45 (3d Cir. 2002) (barring later claims asserted that were encompassed in prior release based on same factual predicate). The doctrine does not, as they argue, serve as a basis to refuse approval of a release upon settlement.

Thus, the "identical factual predicate doctrine" does not support the Hummels'
challenge to the approval of the Release itself.

And even if the "same factual predicate doctrine" could apply to the instant
analysis, as stated above, it factually does not fit here. Rather, Plaintiffs' claims in
the Western District relate to servicing of their auto loan that ultimately ended in
repossession. *See, e.g.*, *Hummel*, Case No. 2:23-cv-02002 (W.D. Pa.); D.E. 22, Am.
Compl. ¶ 85 (noting letter stated "improper charges 'may have *contributed to actions
taken to repossess the vehicle*'") (emphasis added). These are all claims relating to
the Hummels' auto loan Account at issue in this case that ended in repossession and
therefore arise out of the same transaction or occurrence.

The Hummels' contentions lack merit, and the Release is appropriate under
this Circuit's long-held precedent. Rather than attack the scope of the release, the
Hummels could have opted out and pursued their claims separately. The Court
should affirm the class settlement approval.

## III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN PERMITTING WELLS FARGO TO ISSUE 1099-C FORMS FOR WAIVERS OF DEFICIENCY BALANCES.

On appeal, the Hummels continue to argue that the Settlement will result in
detrimental tax liability to class members based on the issuance of tax forms (1099-
C Forms or "1099s") stemming from the waiver of deficiency balances on the
Accounts. App. Br. at 23-28. The Hummels offer nothing more than vague and

amorphous contentions about this "tax liability," never explaining what amounts may be owed by any Settlement Class Member, but nevertheless claim that this is a significant benefit to Wells Fargo through nearly $65 million in tax benefits. *Id.* In addition to the flawed application of the "contested liability doctrine" to argue this point, the Hummels' assertions completely disregard the value to class members who will no longer owe approximately $65 million in balances on their Accounts following repossession and sale of their vehicle, and incorrectly compare this term of the settlement to the purported benefit (or lack of "loss") to Wells Fargo. *Id.* at 27. As this Court's precedent makes clear and consistent with the District Court's holding, the analysis focuses on the benefit to the class as opposed to "conjectural benefits to Wells Fargo." Appx26.

### A.    The "Contested Liability Doctrine" Advanced by the Hummels Does Not Negate Wells Fargo's Obligation to Issue 1099-C Forms.

As explained to the District Court, Wells Fargo will issue 1099s as a result of the waiver of deficiency balances as part of the relief provided in this settlement in accordance with the applicable rules and regulations. To the extent that the circumstances of a particular account in this settlement would not trigger the issuance of a 1099 as part of the deficiency balance waiver under the applicable rules and regulations, then one will not be issued. 26 C.F.R. § 1.6050P-1. Regardless of how strenuously Class Counsel or counsel for the Hummels seek to advocate for

Wells Fargo to not issue 1099-C's, their litigation arguments do not excuse Wells Fargo of its tax reporting duties.

In arguing that Class Counsel has taken an inconsistent approach to whether 1099s should be issued for settlements such as this, the Hummels cite a prior motion to intervene and objection to final approval of class settlement in *Brennan v. Community Bank, N.A.* App. Br. at 23-24. While it is immaterial as to the instant Settlement whether Class Counsel has ever changed positions in negotiating certain terms of class settlements years after advancing the argument, the *Brennan* Court addressed this issue and explained why the objection has no place in evaluating settlement approval:

> The first issue focuses on the provisions in the settlement stating that the defendant will issue 1099-C tax forms to all class members whose deficiency balance it waives. (Doc. 107, p. 9). This is simply an objection to the settlement as it pertains to all class members. While the Intervenors argue that issuing 1099-C tax forms to class members amounts to nonfeasance because binding authority requires a different result, this argument fails because the "binding" authority is arguable and this very issue has been vigorously briefed by both sides, indicating that the law is not clearcut and *that the settlement may, in fact, reflect a correct interpretation of tax law and that of the Third Circuit*. The Intervenors *fail to demonstrate how this issue evidences adversity of interest, collusion, or nonfeasance* on the part of the plaintiffs or their attorneys.

*Brennan v. Cmty. Bank, N.A.*, 314 F.R.D. 541, 545 (M.D. Pa. 2016) (emphasis added). This Court should follow that reasoning, as the District Court independently recognized.

Even so, the Hummels' claim that *Zarin v. Comm'r*, 916 F.2d 110 (3d Cir. 1990) controls the taxability of deficiency balance waivers is speculative at best. First, *Zarin* involved a dispute between an alleged debtor and the Commissioner of Internal Revenue—not the creditor of the settled debt—and made no mention of whether the creditor issued a 1099 nor whether that would be appropriate. *Id.* at 112. Second, the court held the discharge of the gambling debt did not create taxable income because the gambling debt was legally unenforceable as a matter of law— not because the debtor had made any claim against the creditor casino that he disputed the amount of the debt itself. *Id.* at 113 ("Because the debt Zarin owed to Resorts was unenforceable as a matter of New Jersey state law, it is clearly not a debt 'for which the taxpayer is liable.'"). Notably, in the terms of this Settlement, Wells Fargo does not admit liability. Appx696-697, at ¶ S. At bottom, *Zarin* does not stand for extinguishing Wells Fargo's responsibility to report information to the IRS, and to the extent the Hummels or any other class member would like to dispute their taxable income, that is between them and the IRS.

The Hummels fail to provide any controlling authority that supports their contentions—rather, if anything, the authority supports the reasonableness of the Settlement terms in providing information that a class member may be subject to tax liability and that the individual may seek to dispute the taxability of settled debt with the Commissioner of Internal Revenue. *See Antista v. Fin. Recovery Servs., Inc.*,

No. 2:17-CV-3567 (WJM), 2018 WL 259771, at *3 (D.N.J. Jan. 2, 2018) (noting "[i]ndeed, settlement '*may* have tax consequences,' depending on a debtor's individual circumstances" and holding statements to that effect are not misleading); *Rood v. Comm'r*, 71 T.C.M. (CCH) 3125 (T.C. 1996) ("If a settlement alone were sufficient to establish the disputed nature of a debt, a taxpayer whose liability for the full amount of a settled debt was not in question would reap a windfall in the form of an untaxed freeing of the assets previously offset by the liability represented by the debt."), *aff'd sub nom. Rood v. Comr. of IRS*, 122 F.3d 1078 (11th Cir. 1997) (affirming Tax Court's holding that individual "realized income from the cancellation of indebtedness in the amount of the balance of that account written off by [casino]").

There was no abuse of discretion in approving settlement terms that permit Wells Fargo to comply with its tax reporting obligations.

### B.   **The District Court Properly Exercised Its Discretion In Approving the Settlement Notwithstanding 1099-C Form Issuance.**

Because there is no basis to conclude the District Court erroneously applied the law on whether 1099's should be issued, the District Court properly exercised its discretion in approving the settlement.   Consistent with the *Brennan* Court's conclusion that there is no adversity to settlement class members in receiving tax documentation, 314 F.R.D. at 545, the District Court held the Hummels' objection "fail[ed] to demonstrate why the issuance of a 1099(c) makes the Settlement

Agreement unfair or unreasonable" because "the tax issues which may arise from the issuance of a 1099(c) are purely speculative." Appx25.

On appeal, the Hummels argue with no foundation that "the corresponding benefit to Wells Fargo [by issuing 1099s] also signaled an unfair outcome" of the settlement approval because the "value of tax deductions to Wells Fargo from $64.39 million in losses would almost certainly exceed the $15 million that the bank agreed to pay under the settlement agreement." App. Br. at 27. There is no support for the Hummels' contention that a class settlement must hurt the defendant as much as it benefits the class, nor have they offered a scintilla of evidence that Wells Fargo will receive some vague tax benefit in excess of letting go of nearly $65 million in deficiency balances. Federal Rule 23 contains no provision analyzing whether the defendant is "injured" enough by class relief – rather, as the District Court noted, it is "tasked with considering the benefit to the class, not conjectural benefits to Wells Fargo." Appx26; Fed. R. Civ. P. 23. In turn, whether Wells Fargo obtains any net benefit from this term of the class settlement (which there is no evidence it will) is not the focus of this Court's review of the District Court's approval.

The Hummels appear to believe class members would be better off actually owing deficiency balances than they would potentially owing taxes on the waiver of such balance. It defies logic to claim that owing taxes equal to some percentage of the discharged debt is more burdensome than owing the full amount of the debt itself.

Moreover, as the Hummels acknowledge, not all class members will even be subject to potential tax liability—either because the balance was less than $600, there is no outstanding balance at the time the settlement terms are effectuated, or because they regained possession of the vehicle, among many other individual factual circumstances that would apply to determine whether Wells Fargo actually issues the 1099-C as to any Account. App. Br. at 25, 27. This last category is the exact position the Hummels are in: they have no interest in whether tax liability will result because they are not receiving any waiver or compromise of any balance due to regaining possession of the vehicle, and as of the date of final approval, were subject to bankruptcy proceedings. Appx672.

Thus, there is no evidence that Wells Fargo's issuance of 1099s will detrimentally impact the settlement class, nor that Wells Fargo will receive any benefit in return that would impact the settlement approval analysis. Moreover, even if there was a conceivable benefit by its issuance of required tax forms, the Hummels have not sufficiently argued how this impacts the approval of the Settlement. At bottom, the District Court's approval of these benefits and Wells Fargo's permissible tax reporting obligations does not exhibit an abuse of discretion.

## IV. WELLS FARGO TAKES NO POSITION ON CLASS COUNSEL'S FEE PETITION.

Consistent with the Settlement Agreement, Wells Fargo takes no position on the fees Class Counsel should be awarded other than not opposing any request up to

$6 million in fees or $100,000 in reimbursement of expenses. Appx746, at ¶ 15.1. In fact, pursuant to the terms of the Settlement Agreement, any court's decision to modify the award will not have any impact on the effectiveness of the Settlement. *See* Appx748, at ¶ 15.7.

## V. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN APPROVING THE SETTLEMENT BENEFITS.

In challenging the sufficiency of benefits afforded under the Settlement to class members, the Hummels argue that the Settlement fund of $15 million is inadequate based on the following: (1) the recoverable damages under the Pennsylvania Uniform Commercial Code ("UCC") are higher than the anticipated cash payment to be distributed, (2) the deficiency balance waiver is "illusory" given Wells Fargo's issuance of 1099s where applicable because doing so will trigger some ambiguous and unspecified tax impact, and (3) the reimbursement of deficiency payments to class members will "reduce" the fund balance to just over $8 million without accounting for counsel fees. App. Br. at 37-41. None of these arguments have merit, as the District Court carefully evaluated the benefits in determining the Settlement was fair, reasonable, and adequate. Appx6-21.

Federal Rule 23(e) requires trial courts to determine the settlement relief is adequate by considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any

proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

In this Circuit, courts are to review a class settlement using the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which evaluate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re AT & T Corp.*, 455 F.3d 160, 164-65 (3d Cir. 2006) (citing *Girsh*, 521 F.2d at 157). "In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re New Jersey Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 80 (3d Cir. 2018) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998)).

This evaluation "involves only 'two types of evidence: a substantive inquiry into the terms of the settlement relative to the likely rewards of litigation[ ] and a procedural inquiry into the negotiation process.'" *Id.* (quoting *In re Gen. Motors*

30

*Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 796 (3d Cir. 1995)).

It does not require, as the Hummels suggest, that the settlement fund meet a certain

threshold percentage of the potential damages—particularly because the court must

consider the "attendant risks of litigation" such as the weaknesses in plaintiff's case,

the complexities in litigating a case with thousands of class members, and the

potential for no recovery at all. *Id.* at 81. Indeed, "courts have long held that a cash

settlement providing only a fraction of the potential recovery does not render a

settlement inadequate or unfair." *Id.* at 82 (quoting 2 McLaughlin on Class Actions

§ 6:16 (14th ed.)).

Though the Hummels characterize the District Court's discussion of these

benefits only in the context of addressing their objection, its analysis was far more

comprehensive. Here, the District Court expanded on each of the *Girsh* factors and

the requirements under Rule 23(e)(2)(C), finding that the Settlement fund and other

relief would provide a significant benefit to the class. Appx13-21; Appx26. The

Hummels' arguments do not demonstrate any abuse of discretion in these findings.[3]

As to the amount and financial value of the Settlement, the District Court

found that the cash fund of $15 million and the deficiency balance waiver totaling

---

[3] The Hummels conveniently ignore various of the *Girsh* factors that the District Court analyzed, including taking into consideration, including, for example: (1) the fact that more than 23,000 notices were sent, with only the objections of the Hummels at issue at the time of final approval; (2) the uncertainty of the outcome of the litigation should it have gone forward. Appx16-20.

over $65 million "provide good value to the class," and in response to the Hummels'
objection, it explained "the debt forgiveness would confer a significant monetary
benefit approximating the amount of the loans" with no future risk of collection
efforts.  Appx20, 24-25.  The Hummels contend that the Settlement fund providing
a cash payment to class members because a "clear majority of that $15 million would
be dissipated" before such distribution, which they contend will be depleted by Class
Counsel's fees of approximately $6 million plus expenses (subject to approval), the
reimbursement of deficiency payments, Plaintiffs' incentive awards, and the
settlement administration costs.  App. Br. at 39.

    To be clear, the Hummels' claim that deficiency payment reimbursement will
"reduce" the fund is misleading—the nearly $7 million referenced will go *directly
to class members* who made such payments, putting money back into the pockets of
class members whose vehicles were sold following repossession leaving a remaining
balance on their account.  Appx5.  That only a certain portion of the class will receive
reimbursement does not transform this benefit into a reduction of class relief,[4] as
"district courts have broad supervisory powers over the administration of class
action settlements to allocate the proceeds among the claiming class members

---

[4] It is unclear what the Hummels ultimately challenge in raising this inaccurate
argument about the reimbursement payments—*e.g.*, they do not claim that this
allocation plan presents any conflicts, inequity, or adversity among the class.  For
the avoidance of doubt, there is no basis to deduct the reimbursement amount from
the value of the Settlement as these are cash payments to class members.

equitably." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (quoting *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 469 (D.N.J. 2008)); *see also In re N.J. Tax Sales*, 750 F. App'x at 83 (noting the Third Circuit has "held that allocation settlements may indeed differ among class members based on the extent of their damage" in affirming additional redemption discount relief to certain class members based on tax lien status); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009) (holding no abuse of discretion where allocation of fund included reimbursement for certain insurance purchases to benefit only some class members, which resulted in a greater percentage of the fund to those individuals). Thus, the Hummels' flawed calculation of the Settlement fund's value to the class, *i.e.*, disregarding $7 million in direct monetary benefit for settlement class members whose vehicles were sold, taints their argument that the Settlement is inadequate.

Relatedly, the Hummels raise the settlement administration costs as a reason the common fund will be depleted. App. Br. at 37. Regardless of whether the Hummels' estimate of administrative fees of over $1.65 million may have been stated by the District Court as $2.5 million, that amount was nevertheless inaccurate—as stated in Wells Fargo's response to the Hummels' objection. Appx677-679. At that time in November of 2023, the settlement administrator had incurred less than $100,000 in fees, and together with future costs incurred through the distribution phase, its fees may be covered completely by the interest earned on

the common fund.  *Id.* (noting $123,000 in interest earned through January 2024 and an initial estimated total cost of administration as $150,000 to $210,000).

As the District Court recognized in addressing the Hummels' objections, it is unreasonable to take such a "myopic view" of the value of the Settlement by focusing solely on cash distributions.  Appx26 (discussing the Hummels' valuation theory in the context of counsel fees).  Despite this caution, the Hummels maintain on appeal their challenge to the adequacy of the Settlement fund without appreciating the value of deficiency balance waivers, post-sale payment refunds, and tradeline deletion—merely offering that a check for $97 from the Settlement is  less than the statutory damages *the Hummels might receive* if their UCC claim was successful.  App. Br. at 38-39.  The difference between the Hummels' UCC damages and the settlement distribution amount does not indicate any abuse of discretion by the District Court in accepting the Settlement amount, especially where the class settlement mechanism provides the inherent benefit of automatically receiving funds in exchange for doing nothing beyond cashing the check.  Regardless, the Class Notice clearly informed the Hummels of their ability to opt out and pursue such damages if they felt that they had valuable claims that would be otherwise released and were unsatisfied by the expected cash distribution.  Appx9-10.  They did not opt out.

Further, there is no merit to the Hummels' objection regarding the District Court's consideration of the value of deficiency balance waivers. Irrespective of the inclusion of its monetary value in considering Class Counsel's fee award, there is no logic to the Hummels' argument that the debt relief to be afforded rendered the Settlement unreasonable. As addressed in Section IV, *supra*, the Hummels' disregard for the waiver of approximately $65 million in debt of class members, of which class members had already made nearly $7 million in payments, defies logic regardless of any tax implication. In addition to being legally meritless and factually unsupported, the Hummels' argument against the issuance of 1099s is insincere because it does not apply to them; in fact, they will not receive a 1099, regardless of whether this term is struck from the Agreement, because they regained possession of the vehicle and have no deficiency balance on their Account. Appx672.

Lastly, though the Hummels do not specifically challenge the tradeline deletion request term of the Settlement, they do not afford it any significance in their evaluation of the benefits either—undermining the credibility of their argument that the Settlement is lacking in value to class members. The District Court did not explicitly accept a specific monetary value associated with credit tradeline deletion requests, but it nevertheless determined the term favored approval because it is a benefit which may not have been awarded even if Plaintiffs were successful in litigating their claims. Appx13, 20. Because the UCC does not refer to credit-

35

tradeline relief and has never "been the subject of any decisional appellate authority in Pennsylvania or the Third Circuit," there was great uncertainty as to whether this benefit could be achieved absent the Settlement and therefore favored approval. *Id.* The lack of consideration for this term's value to the class further erodes the integrity of the Hummels' objection.

Consequently, the Hummels' objection to the sufficiency of the Settlement based on the amount of the fund, the reimbursement of deficiency payments, and the accompanying deficiency balance waiver provides no basis to find an abuse of discretion by the District Court in granting final approval of the Settlement.

## VI.   THE DISTRICT COURT WAS NOT REQUIRED TO APPROVE THE WITHDRAWAL OF THE BROOKS-WADE OBJECTION.

The Hummels speculate that Class Counsel must have promised Ms. Brooks-Wade something in exchange for the withdrawal of her objection to the settlement approval, but there is no support for that accusation. App. Br. at 41-43. Accordingly, the District Court was not required to approve the withdrawal pursuant to Federal Rule of Civil Procedure 23(e)(5)(B), and Ms. Brooks-Wade was free to voluntarily retract her objection. In fact, Ms. Brooks-Wade submitted affidavits to the District Court explaining that she was never offered or discussed receiving anything of value in exchange for the withdrawal of her objection. Appx803-805.

Relatedly, Appellants offer no authority for their contention that a "promise" to an objector that she will receive the benefits of a class settlement if she withdraws

her objection is sufficient to trigger Rule 23(e)(5)(B) and require court approval. App. Br. at 42-43.   Notwithstanding the Hummels' speculation that this even occurred, an objector is entitled to the benefits of a class settlement whether or not her objection is withdrawn, meaning there could be no exchange of any consideration for the withdrawal.  Further, Class Counsel does not have the authority to ensure the grant of settlement benefits to class members—as the District Court, and in turn, the Settlement Administrator, is vested with that responsibility—so there can be no "promise" that the grant of benefits would hinge on an objector's withdrawal.

Accordingly, the Hummels' objection on this point is wholly unsupported by fact or law and should not be considered as a basis to disturb the class settlement approval.

## CONCLUSION

As the District Court has determined, none of the Hummels' arguments have merit, and the Hummels have failed to demonstrate that the District Court abused its discretion in granting final approval of the class settlement.  Accordingly, the Third Circuit should affirm the District Court's decision.

Dated: July 17, 2024                    Respectfully submitted,

                                        *s/ Jarrod D. Shaw*
                                        Pennsylvania Bar No. 93459

                                        Jarrod D. Shaw
                                        Karla L. Johnson
                                        MCGUIREWOODS LLP
                                        260 Forbes Avenue
                                        Suite 1800
                                        Pittsburgh, PA 15222
                                        T: (412) 667-7907
                                        F: (412) 402-4193
                                        jshaw@mcguirewoods.com
                                        kjohnson@mcguirewoods.com

                                        *Counsel for Appellee*
                                        *Wells Fargo Bank, N.A.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- This brief contains 9,139 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because:

- This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

The text of the electronic brief is identical to the text in the paper copies.

At least one of the attorneys whose names appear on this brief is a member of the bar of this Court.

The electronic version of this brief has been scanned for viruses using CrowdStrike Falcon Sensor, Version 6.40.15406.0, and no virus was detected.


*s/ Jarrod D. Shaw*
Jarrod D. Shaw

*Counsel for Appellee*
*Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2024, the foregoing was filed with the Clerk of the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system, which will also serve counsel of record.

*s/ Jarrod D. Shaw*
Jarrod D. Shaw

*Counsel for Appellee*
*Wells Fargo Bank, N.A.*